### Thomas A. Flood, Administrator, Plaintiff in Error, v. Keeley Brewing Company, Defendant in Error.

### Gen. No. 16,540.

1. APPEALS AND ERRORS—*estoppel to complain of improper instruction*. A plaintiff in an action for the wrongful death of a child cannot complain of defendant's instruction to the effect that contributory negligence of the mother would bar a recovery, where plaintiff's instructions and argument submit such question to the jury.

2. DEATH—*when negligence of parent of deceased child bars suit*. It would seem that the contributory negligence of one parent or next of kin will bar the other parent or next of kin not guilty of such negligence in case of the death of a minor child not chargeable with contributory negligence.

3. HIGHWAYS—*evidence of negligence of mother of child run over by wagon*. The mother of an active two-and-one-half-year-old child, being busy in a store, was informed that the child was going

into the street and requested her sister to go after her. The sister hesitated, whereupon the grandmother started, but being delayed by the door and by falling at the curb arrived too late to prevent the child being run over and killed by a wagon. *Held*, in an action by an administrator, the evidence was sufficient to submit the mother's negligence to the jury, but was insufficient to sustain a finding that the mother was in fact guilty of contributory negligence.

4. HIGHWAYS—*evidence insufficient to show negligence of driver running over child.* A brewery wagon, being driven at a moderate trot, ran over and killed a two-and-one-half-year-old child in a street. There was evidence that the child passed in front of a standing horse and wagon just before she was struck and that the driver was looking straight ahead and did not see the child until two or three feet in front of his horse, when he unsuccessfully tried to bring them to a standstill. There was contradictory evidence that the standing horse and wagon was further down the street, that the brewery wagon was twenty-five feet away when the child was in the street, and that the driver was not looking where he was driving and never stopped or checked his horse. *Held*, on an issue whether the driver was guilty of negligence which was the proximate cause of the death, a verdict for defendant would be sustained.

5. HIGHWAYS—*when driver need not look ahead.* Where a driver of a wagon ran over a child in a street, that the driver was not looking straight ahead as he crossed a street crossing is not necessarily negligence.

Action in case for death caused by alleged wrongful act. Error to the Superior Court of Cook county; the Hon. MARCUS A. KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed December 11, 1912. Rehearing denied December 26, 1912.

JAMES E. McGRATH, for plaintiff in error.

ROBERT J. SLATER, for defendant in error.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

This writ of error is prosecuted to reverse a judgment for costs in favor of Keeley Brewing Company in an action on the case for damages for the alleged negligence of the defendant in error, causing the death of plaintiff in error's intestate, an infant daughter of

the age of about two and one-half years. The count of the declaration upon which the case was tried charged that while the deceased was crossing 31st street near the intersection of Forest avenue, Chicago, defendant in error negligently drove its team of horses upon her and that its horses trampled upon, and so injured her as to cause her death.

One of the issues in the case was whether or not the negligence of the child's mother, Mrs. Flood, contributed to the cause of its death. It is insisted by plaintiff in error that the court erred in instructing the jury for the defendant in error that contributory negligence of the mother would bar a recovery in this case, (1) because there was no evidence in the record tending to prove that she was guilty of such negligence; and (2) because the law is that contributory negligence of the mother would not be a bar to a recovery in the name of the administrator, by the father or other next of kin not guilty of such negligence. The evidence upon the question of the mother's negligence simply shows that the deceased and her twin brother were very lively and active children requiring pretty close attention to keep them in doors, and that they were in the store of Mrs. Clinnin, their grandmother, on the south side of 31st street with their mother on the day of the injury; that the mother had just attended to the wants of the intestate at the toilet in the back of the store, and was attending to the wants of the intestate's twin brother, when the bread man came into the front door of the store and at her, deceased's, request let her out on the sidewalk; that at that moment a young lady, Miss Hopkins, who was in the store called out that Jane, the intestate, was going out into the street; that the mother then told her sister, Miss Clinnin, to go after Jane and that as the sister hesitated, the grandmother immediately started after Jane, and made the second grab for the door before she got it open; that she then went across the sidewalk to the

curb and fell into the street on her knees, but continued to go on her knees after Jane, who was running towards the street car track about fourteen feet away, and while so doing the child was run over by the horses or knocked down, trampled and killed. The grandmother did all she could to reach the child in time to save her, and the evidence is slight to prove that the mother could have reached the child in time to save her had she gone in person, and the mother was not apprised of the child's actual danger until after she was knocked down and trampled upon by one of the defendant in error's horses. While the evidence may have been sufficient to submit the question of the mother's negligence to the jury, yet we could not sustain a finding that she was in fact guilty of contributory negligence under the evidence as it now appears in the record. The plaintiff in error's contentions, however, are completely answered by the fact that in his first and third instructions the negligence of the parents was submitted to the jury, and by said third instruction one of the facts required to be proved by the preponderance of the evidence before the jury could render a verdict for plaintiff in error, was that the mother was exercising reasonable care for the safety of said deceased. Plaintiff in error is, therefore, estopped to here complain of instructions which he, in substance, in his own instructions stated to be the law of the case. Warth v. Loewenstein & Sons, 121 Ill. App. 71; Chicago & A. R. Co. v. Harrington, 192 Ill. 9. Plaintiff in error in his argument also told the jury, in substance, by his attorney that the question of the parents' contributory negligence was one for the jury, and that contributory negligence of either of them would bar a recovery. It is too late now to complain that that is not the law, and for the same reason the plaintiff in error is not in a position to complain of the court's action in refusing to give his instruction No. 5, the latter part of which was in

direct conflict with his instruction No. 3, which the court had already given. As to said proposition of law, it is true that other courts and some of our Appellate Courts have held that the contributory negligence of one parent or next of kin will not bar the other parent or next of kin not guilty of such negligence in case of the death of a minor child not chargeable with contributory negligence. Atlanta & C. Air-Line R. Co. v. Gravitt, 93 Ga. 369; Wolf v. Lake Erie & W. Ry. Co., 55 Ohio St. 517; Davis v. Guarnieri, 45 Ohio St. 470; Macdonald v. O'Reilly, 45 Or. 589; Donk Bros. Coal & Coke Co. v. Leavitt, 109 Ill. App. 385; Chicago City R. Co. v. McKeon, 143 Ill. App. 598. See also case note in Vinnette v. Northern Pac. Ry. Co., 47 Wash. 320, 18 L. R. A. (N. S.) 328. While our Supreme Court has perhaps never been called upon to discuss this precise question, yet in general expressions it has apparently decided the question adversely to the above holdings. City of Pekin v. McMahon, 154 Ill. 141; True & True Co. v. Woda, 201 Ill. 315.

It is also argued by plaintiff in error that the driver of defendant in error's wagon was guilty of negligence that was the proximate cause of the child's death, and that a finding against such contention is manifestly against the weight of the evidence. This is the real question upon which the case turns. Prairie avenue runs north and south, and after crossing 31st street makes a considerable jog to the east, while 31st street runs east and west. Clinnin's store is on the south side of 31st street, near the center of the block, and the whole building has a front of twenty feet, nine inches. There is a thirteen feet alley on the east side of the building and slightly more than the east half of the building is occupied by a plumbing store, and, therefore, Clinnin's store has not more than ten feet front. The places to the west of Clinnin's store in their order are the barber shop with eleven feet front,

the electric shop with eleven feet front, the carpenter's shop with thirteen feet front, the book-store with twelve feet front, Ernie's restaurant with about twenty feet front, and then the grocery store and the saloon with about twenty-two feet front each, the saloon being on the corner of Prairie avenue and 31st street, the east side of the avenue to the north of 31st street being according to agreement of the parties forty-three feet west of the west line of the alley extended across 31st street, or about thirty-two feet west of the west line of Clinnin's store, and the avenue north of 31st street is sixty-six feet wide. The walk on the south side of 31st street is about ten feet wide and from the curb there at Clinnin's store to the south rail of the street car track is thirteen feet, ten inches. All the witnesses agree that the driver of the team and beer wagon in question, with the left wheels tracking in the south street car rail in 31st street, was coming from the west toward the east at the time of the accident in a moderate trot, and that the horses were never stopped or slowed until they were in two or three feet of the child. Four witnesses for the defense testified that there was a laundry single horse wagon or some other such wagon, with a high square covered top standing against the curb in front of the barber shop, the horse facing east, and with his head perhaps a little west of Clinnin's door, and the evidence of one of these witnesses, a school boy, who stood on the walk in front of the plumbing store, is that the little child passed right in front of this horse within a foot or two of the horse's head to the street just before she was struck by the horses of the brewery wagon. The beer wagon was also a covered wagon, and supposing, as the evidence seems to show, that the wagons were each about five feet wide, not more than three or four feet space would intervene between the wagons as the beer wagon passed. Some three or four witnesses for plaintiff in error, including the barber at

the barber shop, testified that there was no wagon in front of the barber shop, but that it was several feet farther west or about in front of the restaurant.  Miss Hopkins, who was in Clinnin's store, testified that after the child had gotten into the street where she was injured, the brewery wagon was about twenty-five or thirty feet from her, and that the driver never stopped or checked his horses, but simply sat on his seat not looking where he was driving, but was facing north and had been so facing since he crossed Prairie Avenue.  Charles Burns, who was on the south side of 31st street, on the sidewalk about seventy-five feet east of Clinnin's store, and who had just crossed the street from the north, testified that, as the child left the curb, the brewery wagon was about the west side of Prairie avenue, and when it got into the street the brewery wagon was about ten feet from it, and that he noticed that the driver was looking north on Prairie avenue, and never slacked the speed of his horses before he struck the child, and that when the driver pulled up his team the child was then under the north horse.  Michael Murray, the driver of the brewery wagon, testified that as he approached the point of the accident he was driving four or five miles an hour and looking straight ahead and was not then looking north and never saw the child until she was about two or three feet in front of the horses, and that he then held his horses back for all he was worth and brought them to a stand still so suddenly that they reared up; that he heard a scream, but that he had already seen the child and stopped his team, and that the child and Mrs. Clinnin were both at that time making a nip and tuck race to the horse's feet.  Arthur Loeb, the school boy who was apparently a disinterested witness and who had the best opportunity of any of the witnesses to see the accident, testified that he saw the child all the time after she came out of the store; that when she got down off the curb the driver's horses were about

to Campbell's electric shop (about twenty-five feet from the child) and she stopped about two feet from the curb; that she then ran to the street car track and was about two feet south of the rail when struck; that he started to run out and stop her, but jumped back when Mrs. Clinnin came out of the door after her; that he saw what the driver was doing and that he pulled the lines hard as he could to hold them from hitting the child and the horses reared and struck the child, while it was standing facing them and had just stopped. Two juries have rendered verdicts of not guilty in this case, and it was peculiarly and specially the province of the jury to settle the question of whether or not under the circumstances the driver of defendant in error was guilty of negligence that was the proximate cause of the child's death. It is strenuously argued that the driver would not have failed to see the child in time to have saved it had he been looking ahead with due care as he ought to have done. The evidence would warrant the position that the driver was looking north as he crossed the north jog of Prairie avenue, but that could not be said to be negligence necessarily, as a driver must necessarily be watching right and left while crossing streets to prevent collisions from vehicles and persons crossing the streets. From the evidence in this case, when the driver was leaving Prairie avenue he was only a few feet from the child, then perhaps near where it was struck. In view of his position the jury no doubt reached the conclusion that the coming of the child in front of the driver's team was so sudden and unexpected that he was not negligent in so failing to observe the child. The child was very small and while directly in front of his team within ten or fifteen feet might not be observed, although he was looking ahead then, assuming that he had just been observing north on Prairie avenue as reasonable care might require. The accident is a sad and distressing one to read

about, but while we think the evidence would have warranted a verdict of guilty, we cannot say the verdict is manifestly against the weight of the evidence, and it is not, therefore, our province to interfere with the verdict and judgment. Donelson v. East St. Louis & S. Ry. Co., 235 Ill. 635.

The judgment is affirmed.

*Judgment affirmed.*