## Chicago City Railway Company, Appellant, v. Frank McKeon, Administrator, Appellee.

### Gen. No. 13,943.

1.   VERDICT—*when not set aside as against the evidence.* A verdict will not be set aside as against the evidence unless there is a manifest preponderance of evidence against it.

2.   IMPUTABLE NEGLIGENCE—*how far doctrine of, applicable.* The negligence of one of the next of kin of the plaintiff's intestate contributing to the death of such intestate is not a defense to the merits of the action; at most, such negligence will but bar the right of such next of kin to damages.

3.   IMPUTABLE NEGLIGENCE—*when doctrine of, does not apply.* The negligence of the parents of an infant child in entrusting it to the care of another child cannot be urged in the absence of evidence tending to show that such parents did so entrust such child.

4.   IMPUTABLE NEGLIGENCE—*when doctrine of, does not apply.* It is not negligence as a matter of law for a parent not to forbid or prevent an eleven year old child "in the habit of doing errands for her mother" taking in full daylight her three year old sister with her to the dairy "for company."

5.   INSTRUCTIONS—*when modification proper, where death resulted from plaintiff's intestate being struck by a street car.* An instruction given in form as follows:

"If the motorman in charge of the defendant's cars exercised ordinary vigilance and care to do what he could do to avoid injuring the plaintiff, after it was possible for him, by the exercise of ordinary care, under all the circumstances in evidence, to know of her danger, then the defendant is not liable, and your verdict should be not guilty,"

was not improperly modified by striking therefrom the following:

"The defendant company was not required to assume, when the deceased was on the street on which the defendant was running its train, that she was going to run in front of its car, nor did the law require the defendant to stop its car lest she might do so."

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed October 8, 1908.

**Statement by the Court.** This is an appeal from a judgment of the Superior Court of Cook county for $2,000 in favor of Frank McKeon, administrator

of the estate of Alice Kiely, and against the Chicago City Railway Company.

The judgment was rendered on the verdict of a jury in an action brought by McKeon as administrator, for causing the death of his intestate on April 10, 1905. The deceased was a child three years and four months old at the time of her death.

The declaration (in three counts) sets up the official character of the plaintiff, and that said Alice Kiely left surviving her James Kiely, her father, Lizzie Kiely, her mother, John Kiely, her brother, and Bessie Kiely, her sister, as next of kin and heirs at law.

In the first count it alleges that the defendant on April 10, 1905, was operating a street railway on Wallace street in Chicago, and that by its servants, who were in management and control of the same, it drove an electric car negligently over Alice Kiely, who was "with all due diligence" crossing the railway on said Wallace street at the intersection of Thirty-eighth street.

The second count adds to these allegations the statements that Wallace street at the intersection stated is one of the most traveled streets in Chicago, which has almost two million of inhabitants; that within a short distance of said intersection are a public grammar school and a parochial school, both largely attended; that daily hundreds of school children from said schools cross and re-cross said intersection, and that the defendant drove the said car at a high and dangerous rate of speed considering the number of persons habitually passing on said Wallace street, to-wit, at ten miles an hour.

The third count avers that the fatal accident occurred because of the defendant's negligently driving said car toward and upon said intersection without ringing a bell or giving warning of any kind.

To this declaration the defendant pleaded the general issue.

The action was brought June 26, 1905, and the issues were submitted to a jury on April 12, 1907.

The jury found the defendant guilty and assessed the damages at $2,000. A motion for a new trial was made but denied, and judgment was entered on the verdict. This appeal followed and in this court many assignments of error have been made.

The points, however, relied on and argued here are these:

First. That the verdict is against the manifest weight of the evidence on the question of the negligence of the defendant, and a new trial should therefore have been granted by the trial judge.

Second. That the negligence of the elder sister of the deceased, Bessie Kiely, in whose care and custody the deceased was at the time of the accident, and who is one of the next of kin for whose benefit the action is prosecuted, contributed to produce the injuries which resulted in the intestate's death. Because, on this question, the appellant claims, there could be but one conclusion in reasonable minds, the case should have been taken from the jury on the motion for a peremptory instruction made by it at the conclusion of the plaintiff's evidence and repeated at the close of all the evidence, or at the least, the verdict should have been set aside as against the clear weight of the evidence.

Third. That the court refused altogether one proper instruction asked by the defendant and modified and gave as modified two others offered by the defendant.

WILLIAM J. HYNES, FRANKLIN B. HUSSEY and WATSON J. FERRY, for appellant.

GEORGE E. GORMAN and McGOORTY & POLLOCK, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

It would be useless for us to discuss the conflicting evidence in this case in detail. We could not hope that such a discussion would convince the defendant of that which seems clear to us—that on the disputed points of the defendant's negligence and of the alleged contributory negligence of Bessie Kiely, the sister of the deceased, there is not a manifest preponderance of evidence against the verdict and judgment, and therefore no reason for our interfering with them on that account.

The negligence of the defendant which resulted in the death of this little child was alleged to be the running of the car at such a rate of speed, at a street crossing proven to be often crowded and often occupied by the small children of a populous neighborhood, as was dangerous to those small children. It was also alleged that the street car approached and crossed the intersection without sounding a gong or bell, and that this also was dangerous and negligent. These were questions for the jury and they were left to the jury under instructions asked for by the defendant and fair to it. The modification of two of those asked and given did not, as we shall point out, detract from the fairness of this presentation of the issues to the jury. The jury under these instructions as to the law found the facts in favor of the plaintiff. While it is true that the duty under the assignments of error in this cause devolves on us to weigh the evidence on which this verdict was found, and if we decide the clear and manifest preponderance of that evidence to be inconsistent with the verdict, to reverse the judgment based on it, yet not all the arguments which are in place and may be considered forceful, in attempting to convince the jury that they should take one view of the case rather than the other, are equally in place or can be expected to be as effective in this court. For example, questions of credibility, of the relative weight which

should be given to the testimony of children of a tender age and to that of parties interested through participation in the accident, and of whether minor inaccuracies, contradictions and inconsistencies in the testimony of a witness ought to prevent faith in his story, must be and should be left almost altogether to the ultimate decision of the jury. It is they, not we, as'the tritest of legal maxims has it, that see and hear the witnesses.

In this case it is to considerations of the kind suggested that counsel for defendant in argument are compelled largely to confine themselves in discussing the question of the weight of the evidence on the negligence of the servants of the defendant.

The youth of some of the plaintiff's witnesses, the ease with which the feelings of children are played on, minor inaccuracies and inconsistencies in their evidence—inconsistencies, it is claimed, in the testimony of each considered separately, and contradictions of each other—are all vigorously commented on in what would be entirely appropriate argument to the jury in favor of the one proposition that the car bell was sounding as it approached the crossing, and of another, that the car was not running at a dangerous rate of speed—alleged facts to which the defendant's witnesses, in opposition to those of the plaintiff, testified.

But it cannot be doubted that if the plaintiff's witnesses in the material parts of their story were believed by the jury, the verdict was justified. As to the speed at which the car was going indeed, which we consider the most important factor in the case, we much doubt whether the testimony of the motorman himself for the defendant, that the speed of the car was between eight and nine miles an hour at this crossing, was not enough to justify its being left for the jury to decide whether the defendant was not guilty of negligence.

And the same arguments which are used to convince us that the testimony which would convict the defendant's servants of negligence is not trustworthy, as

compared with that which contradicts it, are employed
to establish the other proposition that the negligence of
Bessie Kiely materially contributed to the death of
her sister. It is said that the motorman's story is
inherently more probable than the girl's; that the lat-
ter indeed is impossible and that the true version of
the accident is that "the deceased and her sister stop-
ped to permit the car to cross, in response to the
warning bell, and after it had reached a point a few
feet from them darted across the track in front of it."

But this is but the story on one side of the contro-
versy. If Bessie Kiely and the other witnesses are to
be believed, it is not the correct one. According to
that story Bessie Kiely, a child herself but eleven
years old, carrying a pitcher of milk in one hand and
holding her little sister by the other, saw the car ap-
proaching at a considerable distance and at a moder-
ate rate of speed. She passed through a group of play-
mates but kept on across the intersection, relying on
the presumption that the car would be still further
checked at such a place and not run her down. It
came on, however, at an accelerated and dangerous
speed and did run over the children.

If the contributory negligence of Bessie Kiely is a
material matter in this controversy, then it was a ques-
tion for the jury what were the actual facts of the at-
tempted crossing, and also whether the facts found in-
volved contributory negligence. Logue v. C. & A. R.
R. Co., 158 Ill. 621; True v. Woda, 201 Ill. 315. It
should not be overlooked that if the motorman's story
were taken as true and accurate, it would acquit Bes-
sie Kiely as well as himself of negligence, and go far
to put the accident in that class of deplorable incidents
which no ordinary, reasonable and practicable care on
the part of persons old enough to exercise it could
have prevented. And generally it may be said that if
there are inaccuracies and inconsistencies in the testi-
mony of plaintiff's witnesses when the story of each

is compared with the others, that is not the less true of the testimony of defendant's witnesses.

But we cannot concede that the question of Bessie Kiely's contributory negligence is involved in this cause.

In the only reported case in this State in which the question involved here was directly raised, the Appellate Court of the Fourth District decided that at most the contributory negligence of one of the next of kin could only be shown in bar of the portion of the damages which would go to such person. Donk Bros. Coal & Coke Co. v. Leavitt, 109 Ill. App. 385. If this be the law there can be no inference drawn from the amount of the verdict, that it included any damages for Bessie Kiely. If special instruction on this point for the jury was desired, it should have been asked for by the defendant. It is to be noted that no instruction on the matter of the contributory negligence of Bessie Kiely, as now alleged, was asked.

If it be claimed that because the parents entrusted the deceased to her older sister's care and control, the contributory negligence of Bessie Kiely, if it existed, should be imputed to the father and administrator of the deceased, and that if so imputed it must be again considered the contributory negligence of the deceased child herself, the answer may well be that there is no evidence that the father or mother of this child did entrust her to her sister's care on this occasion.

It certainly cannot be held, as a matter of law, that it was contributory negligence in a parent not to forbid or prevent an eleven-year-old child, "in the habit of doing errands for her mother," taking, in full daylight, her three-year-old sister with her to the dairy "for company." Nor can it be said that the very natural condition of things, by which the "oldest girl in the family" used "to sort of look after Alice for their mother," is proof of negligence on the parent's part generally or on this occasion in particular. Liv-

ingston v. Blind, 138 Ill. App. 494; C. & A. R. R. Co. v. Becker, 84 Ill. 483.

Counsel for appellant claim—quoting a remark from T. W. & W. R. Co. v. Grable, 88 Ill. 441—that if there was contributory negligence on the part of one charged with the care of the injured party, "there can be no recovery."

As we have indicated, we are not prepared to hold that the contributory negligence of the one child, even if it existed, was imputable to the other. It is not necessary for us, however, to decide this point, for the alleged contributory negligence was not, we think, proved—certainly not so proven as to warrant us in overriding the verdict of a jury.

Of the instructions generally, it may be said that the twenty-five asked by the defendant and given unmodified as asked, and the two others given as modified, seem to us to present the theory of the defendant as to the happening of the accident with sufficient particularity.

In a case where it was claimed and argued before the jury by the defendant that the deceased ran in front of a car when the motorman had no reason to suppose she would do so, no jury could have misunderstood this language in the 15th instruction:

"If the jury believe from the evidence, under the instructions of the court, that the deceased's starting to go across the street in the way of, or in front of the defendant's car, if she did so go, was, under all the circumstances in evidence, extraordinary, not reasonably to be expected or unusual, and as the car approached the place in question it was being operated with ordinary care by the servant or servants in charge thereof, then it became the duty of the defendant to stop its car only as soon as the servant or servants in charge thereof had notice or knowledge of the intention of the deceased to do as he did; and if the jury believe from the evidence, under the instructions of the court, that such notice or knowledge came too late for

the said servant or servants in the exercise of ordinary care to stop said car without injuring the deceased, then the jury must find the defendant not guilty."

Nor this from the 25th instruction:

"The court instructs the jury that if they believe from the evidence, under the instruction of the court, that the deceased was suddenly and without any negligence or fault on the part of the defendant, placed in a position of danger, then in order to charge the defendant with the duty to avoid injuring the deceased, the plaintiff must show by a preponderance of the evidence that the circumstances were such that the servant or servants of the defendant had time and opportunity to become conscious by the exercise of ordinary care of the facts giving rise to such a duty, and a reasonable opportunity to perform it."

Nor this from the 27th as given:

"If the motorman in charge of the defendant's cars exercised ordinary vigilance and care to do what he could do to avoid injuring the plaintiff, after it was possible for him, by the exercise of ordinary care, under all the circumstances in evidence, to know of her danger, then the defendant is not liable, and your verdict should be not guilty."

In view of these instructions we cannot hold that the modification of the 27th instruction as offered by striking out the words:

"The defendant company was not required to assume, when the deceased was on the street on which the defendant was running its train, that she was going to run in front of its car, nor did the law require the defendant to stop its car lest she might do so," was reversible error.

But we must go further. It seems to us that it was proper to strike them out, for they were likely, from the phraseology used, to mislead the jury into the belief that they were to assume as true the disputed proposition of fact that the deceased did, as claimed by the defendant, break away from her sister and run before

the car, when the motorman had no reason for apprehension that she would. Moreover, the Supreme Court has said that it is wrong to instruct the jury that the defendant might "assume" or "presume" anything. C. & A. R. R. Co. v. Sanders, 154 Ill. 531-538. While it is true that the language of the refused instruction does not in terms ask them to do so, there is a dangerous suggestion in it, it would seem to us, that the motorman need not "assume" that the deceased would run in front of his car, but might "assume" the contrary.

The sentence which was stricken out at the close of the 28th instruction as offered, added nothing to the force of the proposition stated in what was left, and so far as it stated the law correctly was unnecessary in view of the remainder of the instruction and in view of the other instructions heretofore quoted. Moreover, saying as it did, that if the deceased ran suddenly upon the track and the defendant's servants did all they could in the exercise of ordinary care to avoid injuring her, the defendant was not liable, it might have misled the jury into supposing that the law did not require, preceding the appearance of the child on the track, care on the part of defendant's servants in approaching the street crossing.

The same may be said of the 29th offered instruction. Its refusal was not in this case error, for those given covered the law sufficiently on the point involved.

We find no reversible error in this record, and the judgment of the Superior Court is affirmed.

*Affirmed.*