Justice Wood concurs in the views here stated.

St. Louis-San Francisco Railway Company *v*. Gray.

Opinion delivered April 23, 1923.

1. Railroads—killing of animals—presumption of negligence. —Proof that animals were killed in the operation of a train raises the presumption of negligence, which the railway company has the burden to overcome.

2. Railroads—injury to animals by train—evidence.—That animals were killed or injured in the operation of a train may be proved by circumstantial evidence.

3. Railroads—injury to animals—evidence.—Evidence *held* sufficient to warrant the inference that animals found dead or injured near a trestle were injured in the operation of a train.

4. Railroads—injury to animals—evidence.—Whether trainmen's testimony was sufficient to overcome the presumption of negligence arising from proof that animals found dead or injured near a railroad trestle were killed or injured in the operation of a train, *held* for the jury, in view of conflicting testimony for the plaintiff.

Appeal from Poinsett Circuit Court; *W. W. Bandy,* Judge; reversed.

*W. F. Evans, W. J. Orr & E. L. Westbrooke,* for appellant.

There is no evidence to support the verdict. The proof does not raise the presumption of negligence of defendant in the operation of its train. Sec. 8574, C. & M. Digest. If there was a presumption of negligence, it was overcome by uncontradicted testimony of the trainmen. 67 Ark. 514; 78 Ark. 234; *St. L. S. W. Ry. of Texas v. Coleman,* 238 S. W. 366.

*T. E. Allyn,* for appellee.

It was shown that the animals were killed and injured because of appellant's negligence in failure to keep a lookout. Sec. 8568, Crawford & Moses' Digest. Appellant insists there is no evidence to show stock killed or injured by running of trains under rule announced in 80 Ark. 72. In this he is mistaken, since the testimony is ample on this point. 80 Ark. 72. It makes no difference that the evidence was circumstantial, and the verdict is sustained by it. 99 Ark. 372; 138 Ark. 308; 81 Ark. 35; 48 Ark. 495; 57 Ark. 577; 51 Ark. 330; 24 Ark. 252; 90 Ark. 100.

McCulloch, C. J. This is an action instituted by appellee to recover the value of three head of stock alleged to have been killed by servants of appellant in the operation of a train. The verdict was in favor of appellee, and appellant seeks a reversal of the judgment on the ground that the evidence is not legally sufficient to support the verdict.

The animals in question were injured in Poinsett County, near the town of Marked Tree, which is located on appellant's line of railroad about a half-mile south of the bridge across St. Francis River. There is another trestle a short distance south of Marked Tree. The railroad is built along a dump about fifteen of eighteen feet high.

Appellee owned a farm near Lepanto, in St. Francis County, where he kept his stock, and, according to the testimony of Campbell, appellee's manager on the farm,

four head of stock—a mare, a horse, and two mules—
passed out of an open gate and wandered away.  The
manager testified that he went in search of the animals,
and found them at Marked Tree, two of them, a horse
and a mule, dead on the right-of-way, near the railroad
track, on each side of the trestle south of Marked Tree,
and the other two just north of the St. Francis River, the
mare with her leg broken, and the other mule with his
leg skinned.  The suit is to recover damages for the
loss of the horse and mule killed at or near the bridge
south of Marked Tree, and for the mare found with a
broken leg near the St. Francis River bridge north of
Marked Tree.

The precise length of the bridge south of Marked
Tree is not stated, but the witnesses referred to it as a
long bridge.

There was testimony introduced by appellee to the
effect that horse and mule tracks were found south of
the long bridge, and also south of the St. Francis River
bridge, going towards those bridges, and that the tracks
indicated that the animals were going very fast when
they passed along there.  There was a path under the
long bridge.  The theory of appellee is that the animals
were driven onto the bridge by taking fright at the ap-
proaching train, and that the servants of appellant were
guilty of negligence in failing to keep a proper look-
out and exercise care to prevent injuring the stock.  On
the other hand, the theory of appellant on the trial of
the cause was that the animals wandered out on the
bridges, and, there being no walkway, but only ties, with
open spaces between, the animals fell into the spaces
between the ties and were thus injured.

It is conceded that the animals were seen on the
bridges just before daylight, and were first discovered
by the crew of a freight train traveling north.  The train-
men testified that, as they approached the long trestle
south of Marked Tree, they saw by the rays of the
headlight two animals near the north end of the trestle;

that one of the animals was seen to jump off the trestle; that the other animal was found with its legs down between the ties, and that the men procured bars and prized the animal's legs out, and that when they got the animal up on the trestle it struggled and fell over to the ground. These were the two animals that were found by the side of the trestle by Campbell, appellee's manager. Campbell testified that when he got there they had buried the horse and were burning the body of the mule. He testified that both of the animals were on the right-of-way at the time, and that there was a hole as big as his head knocked in the mule's back.

The trainmen testified that they proceeded on the journey and stopped at Marked Tree a short time for train work and to get water at the tank, and then moved on up at a slow rate of speed, and, as they approached the bridge over the St. Francis River, two more animals were found near the north end of the bridge, down on the track, with their legs between the ties. They testified that they backed the train up to Marked Tree and procured lumber and laid a walkway on the bridge, prized the animals out, and walked them off the end of the bridge. They stated that the mare's leg was only skinned, and that she walked along as they led her off the trestle. Appellee's manager testified that the mare's leg was broken. There was testimony introducd by appellant also to the effect that the tracks of the animal were seen going from the north toward the end of the bridge south of Marked Tree, and also that tracks of the animal were seen as if entering upon the bridge from the north end.

Proof that animals are killed in the operation of trains raises the presumption of negligence, which the railway has the burden to overcome, and this proof may be made by proof of circumstances which warrant the inference that the animals were killed or injured in the operation of the train. *St. L. I. M. & S. Ry. Co.* v. *Stites,* 80 Ark. 72.

The testimony is sufficient, we think, to warrant the inference that the animals were injured by the operation of a train. As to the two which were injured at the long bridge south of Marked Tree, they were seen by the trainmen on the bridge; one of the animals jumped off the bridge at the approach of the train, and the other was prized up and then fell off the bridge. One was evidently killed in jumping from the bridge, and the other was killed as it was being extricated by falling off the bridge. The jury might have found that the predicament of each of these two animals was caused by negligence of the trainmen in failing to discover their presence on the track and taking steps to avoid frightening them until they ran onto the trestle. There is evidence that the tracks were made approaching the south end, and this is in contradiction of the testimony of the witnesses who said that there were tracks approaching from the north side. Then the jury might have reached the conclusion that it was unreasonable to believe that the stock would go upon a trestle where there was no walkway, and that it was more reasonable to believe that they were driven onto the trestle by fright. If it were true that the injury was caused in this way, the burden rested upon appellant to overcome the presumption of negligence. The same may be said with reference to the animals that were seen on the St. Francis bridge north of Marked Tree.

The testimony of the trainmen tends to show that they were not guilty of any negligence, and it is urged that the jury had no right to arbitrarily reject the testimony. We do not think, however, that the testimony is so clear and consistent that the jury was bound to believe it. In some respects it was in conflict with the testimony introduced by appellee, and we think it was a question for the jury to determine whether or not the evidence was sufficient to overcome the presumption of negligence.

The question of the legal sufficiency of the evidence is the only one raised, and, since we have found that the evidence was sufficient to support the verdict, it follows that the judgment must be affirmed, and it is so ordered.