(No. 33783.—

HUBERT NUDD, Admr., *et al.,* Appellants, *vs.* WILLIAM MATSOUKAS, SR., *et al.,* Appellees.

*Opinion filed January 19, 1956.*

John G. Phillips, of Chicago, for appellants.

Ross, Berchem, Schwantes & Thuma, of Chicago, for appellee William Matsoukas, Sr.; and, Rosen, Francis & Cleveland, of Chicago, (Sidney A. Wilson, and John F. Rosen, of counsel,) for appellee David L. Thill.

Mr. Justice Davis delivered the opinion of the court:

This case comes here on a petition for leave to appeal from a decision of the Appellate Court for the First District, 6 Ill. App. 2d 504, which affirmed the action of the superior Court of Cook County in dismissing, on motion of defendants, two wrongful death actions brought by Hubert Nudd, as administrator, and a suit brought by a

minor against his father for wilful and wanton misconduct.

The facts as set out in the pleadings are that William Matsoukas, Sr., one of the defendants, on October 26, 1952, was driving a vehicle on a public highway. With him in the automobile were Elizabeth Matsoukas, his wife, Mary Mead Nudd, his sister-in-law, and his two children, Spiros Matsoukas and William Matsoukas, Jr., both minors under the age of seven. It was alleged in the complaint that he "wilfully, recklessly and wantonly" drove his vehicle at an excessive rate of speed on a foggy night, when traveling was difficult because of the wet pavement; that he went through a stop light; that the automobile driven by him collided with one driven by David Thill, likewise defendant herein, and as a result of this collision Elizabeth and Spiros Matsoukas and Mary Mead Nudd were killed, and the other minor, William Matsoukas, Jr., was severely injured, sustaining a skull fracture. Hubert Nudd was appointed as administrator of the estates of the three deceased persons and he filed suit under the wrongful death statute. In a separate count of the complaint, William Matsoukas, Jr., the surviving minor, through Hubert Nudd, as next friend, proceeded against William Matsoukas, Sr., and David Thill, alleging negligence on the part of Thill and wilful and wanton misconduct on the part of Matsoukas, as in the other counts of the complaint.

In all the counts it is alleged that defendant William Matsoukas on the day of the accident maintained liability insurance for himself in the operation of his vehicle; that said defendant has assigned, transferred and relinquished his right to recover for monies expended and to be expended, and for expenses incurred and to be incurred together with any right, interest or benefit that he may derive directly or indirectly from any such claim for damages made on behalf of his living son, as shown by a statement of the defendant Matsoukas attached as exhibit No. 1 to

the complaint. It is not indicated that a written assignment had been made.

Motions to dismiss the counts of the complaint which set up actions arising out of the deaths of Elizabeth Matsoukas and Spiros Matsoukas were filed by both defendants, and a motion to strike the cause of action on behalf of William Matsoukas, Jr., through his next friend, was filed by the defendant William Matsoukas, Sr. These motions were sustained, leaving pending the action arising out of the death of Mary Mead Nudd against both defendants, as well as the action of the surviving minor against defendant Thill. The motions to dismiss the causes of action founded on the deaths of Elizabeth Matsoukas and Spiros Matsoukas were sustained on the ground that the defendant William Matsoukas was a beneficiary and hence the action was barred. The motion to dismiss the cause of action against defendant Matsoukas arising out of the injuries of William Matsoukas, Jr., was sustained on the ground that his father, William Matsoukas, Sr., was a defendant, and the maintenance of such a suit is against public policy. The plaintiffs stood on their complaint, judgment was entered for defendants and appeal taken.

The Appellate Court affirmed the dismissal of the wrongful death actions upon the authority of our decision in *Hazel* v. *Hoopeston-Danville Motor Bus Co.* 310 Ill. 38, and the action of the minor against the father on the rule of parental immunity suggested by the Appellate Court decision in *Meece* v. *Holland Furnace Co.* 269 Ill. App. 164. We granted leave to appeal for the purpose of re-examining the doctrines announced in those cases.

The issues presented by this appeal are twofold: (1) Can the administrator of an estate maintain a suit for tort under the wrongful death statute where one of the surviving next of kin is made the principal party defendant; and (2) can a minor sue his father for wilful and wanton

misconduct? Since the two issues are not closely related we shall consider them *seriatim*.

The wrongful death actions arising out of the deaths of Elizabeth and Spiros Matsoukas were based on the Wrongful Death Act of this State. (Ill. Rev. Stat. 1951, chap. 70, pars. 1, 2.) No such action existed at common law, but was first created in England by sections 1 and 2 of Lord Campbell's Act in 1846. (9 and 10 Vict., chap. 93.) The New York legislature copied the English Act in 1847, and our legislature enacted substantially identical legislation in 1853. (*Chicago and Rock Island Railroad Co.* v. *Morris,* 26 Ill. 400.) The statute was first considered by this court in *City of Chicago* v. *Major,* 18 Ill. 349, where Mr. Justice Caton said: "This is a new cause of action given by this statute, and unknown to the common law, and should not be extended beyond the fair import of the language used; but this it would be difficult to do, for the language is very broad and comprehensive, embracing, in direct and positive terms, all cases, where, if death had not ensued, the injured party could have maintained an action for the injury. This would seem to leave no room for construction, but refers us at once to the inquiry, whether an action could have been maintained by the child, for the injury, had he survived it. The act says, 'then, and in every such case,' the action shall be maintained. To give a further limitation than this would be, not to construe the statute, but to expunge or disregard a portion of it." Subsequent amendments have changed the limit of recovery, the time in which suit must be brought, and the parties for whose benefit the suit may be brought, but have not changed the cause of action in any way as to affect the question here.

The statute creates a cause of action, to be brought in the name of the administrator, for the pecuniary loss which the widow and next of kin may have sustained by reason of the death of the injured person. The damages, under the statute, are to be distributed to the widow and next of

kin according to the rules for distribution of personal property of persons dying intestate.

Since recovery can be had only if the decedent could have maintained the action, the import of the statute itself would bar recovery in the case of a decedent's contributory negligence. However, nothing in the language of the statute bars recovery in the case of a contributorily negligent beneficiary. This is a limitation engrafted on the cause of action by the decisions of this court, based upon the rule that "In every such case the party who by his own negligence has contributed materially to his injury is left remediless by the common law." *Hazel* v. *Hoopeston-Danville Bus Co.* 310 Ill. 38.

This rule was implicitly recognized in *City of Chicago* v. *Major,* 18 Ill. 349, and all subsequent cases involving suits for wrongful death. However, such a rule has not always been thought to be a complete bar to the action if there were both negligent and innocent beneficiaries. (*Donk Brothers Coal & Coke* v. *Leavitt,* 109 Ill. App. 385; *Chicago City Railway Co.* v. *McKeon,* 143 Ill. App. 598.) Nevertheless, in *Ohnesorge* v. *Chicago City Railway Co.* 259 Ill. 424, and *Hazel* v. *Hoopeston-Danville Bus Co.* 310 Ill. 38, this court clearly decided that the contributory negligence of one beneficiary would bar the wrongful death action by the administrator even though there were innocent next of kin who would benefit from the judgment. In the *Ohnesorge case* the court did not consider the question open and merely applied the doctrine of *stare decisis.* However, in the *Hazel case,* the decision was based on the ground that no person could recover for an injury to which he had contributed, and that since the judgment was for a single gross amount, and the cause of action single and inseparable, the negligence of any beneficiary was a bar to the suit.

Subsequent to the Appellate Court decision in the case before us, we have had occasion to re-examine the doctrine of the *Hazel case* in *Bradley* v. *Fox,* 7 Ill. 2d 106. In that

case the administrator sued defendant for causing the wrongful death of his wife by murder. The defendant and an adult daughter were the statutory beneficiaries of the action. Defendant relied on *Hazel* v. *Hoopeston-Danville Bus Co.* 310 Ill. 38, as grounds for sustaining the dismissal of the action. In the *Fox case* we said: "To permit defendant Fox, as sole and principal tortfeasor, to plead his felonious conduct as a defense to taint the actions of persons entitled to sue him alone is to pervert the common-law concept of contributory negligence, and use it as a weapon to inflict wrong without peril, which will not be countenanced by this court." We, accordingly, permitted the action by the administrator even though defendant was one of the principal statutory beneficiaries of the suit. Cf. *Welch* v. *Davis,* 410 Ill. 130.

While the unusual factual circumstances of the *Fox case* made it unnecessary to overrule the *Hazel case,* we think it clear that they are logically inconsistent. The innocent beneficiary in the *Fox case* was no more innocent than such beneficiaries in the *Hazel case.* In neither case does the common-law rule of contributory negligence require the defeat of an innocent party's right to damages for injury. We regard the public policy of this State to require no more than that the person guilty of contributing to his own injury shall not recover. Nothing in the statute or logic requires or suggests that innocent beneficiaries should be deprived of their proportionate share of the judgment as obtained pursuant to legislative enactment.

Upon coming to this conclusion we are met by the argument that the doctrine of *stare decisis* should require our adherence to the rule in *Hazel* v. *Hoopeston-Danville Bus Co.* 310 Ill. 38. In line with this argument, it is suggested that the last session of our legislature recognized that the decisions of this court barred recovery in such a case by amending the Injuries Act (Ill. Rev. Stat. 1955, chap. 70, pars. 1, 2,) to read as follows (par. 2): "In any such

action to recover damages where the wrongful act, neglect or default causing the death occurred on or after the effective date of this amendatory Act of 1955, it shall not be a defense that the death was caused in whole or in part by the contributory negligence of one or more of the beneficiaries. * * * Provided, however, that the amount of damages given shall not include any compensation with reference to the pecuniary injuries resulting from such death, to such contributorily negligent person or persons; and provided further, that such contributorily negligent person or persons shall not share in any amount recovered in such action." We do not consider that the amendment itself indicates any implied approval of our prior decisions. (See *Commissioner* v. *Church,* 335 U.S. 632.) We are indeed treading on dangerous ground when we purport to judge the judicial soundness of our prior opinions by the presence or absence of corrective legislation. (Cf. *Helvering* v. *Hallock,* 309 U.S. 106.) If the recent amendment teaches us anything, it is that the doctrine of indivisibility of the judgment which formed the cornerstone of *Hazel* v. *Hoopeston-Danville Bus Co.* 310 Ill. 38, was fictitious rather than real. *Chmielewski* v. *Marich, 2* Ill. 2d 568.

It is also urged that such a far-reaching change is a matter for the legislature, but this ignores the fact that the courts and not the legislature imposed the restriction upon the action for wrongful death. *Stare decisis* is an important factor in the judicial process, but we must not forget that it is not the whole process. (Cardozo, Selected Writings, pp. 16-17,) As we recognized in *Doggett* v. *North American Life Ins. Co.* 396 Ill. 354, at page 360: "While adherence to the doctrine of *stare decisis* is important to the stability of the law, yet when doubts are raised in the minds of the court as to the correctness of its decision, it is its duty to re-examine the questions involved in the case." Other courts have not been reluctant to re-

verse their prior decisions in holding that the negligence of one beneficiary is not a bar to a wrongful death action. *Lindley* v. *Sink*, 218 Ind. 1; *Burns* v. *Goldberg*, 210 F.2d 646 (Pa.); *Pike* v. *Adams*, 99 N.H. 221, 108 A.2d. 55.

We have, accordingly, determined that the conclusion reached in *Hazel* v. *Hoopeston-Danville Bus Co.* 310 Ill. 38, was not required by statute nor by any recognized rules of common law. In application it achieved the result of depriving innocent plaintiffs of a right granted by statute and permitted defendants to shield themselves from liability by their own guilt. No doctrine of *stare decisis* requires us to perpetuate such an anomalous rule. We, accordingly, hold that the negligence of the defendant-beneficiary does not bar the action but, rather, prevents his right to recover for pecuniary loss. In so far as *Hazel* v. *Hoopeston-Danville Bus Co.* 310 Ill. 38, and other cases cited, are inconsistent with this decision they are hereby overruled.

Turning now to the question of the minor's suit against his father, we are again met with the argument of *stare decisis* with reference to the specific question raised by the dismissal of count 4 of the complaint: Can a minor child sue a parent for injuries caused by the parent's wilful and wanton misconduct? Defendant Matsoukas argues that the common law and the announced public policy of Illinois prohibit a child from suing a parent in tort on the basis of preservation of harmony in the family unit. The minor plaintiff contends (1) that his right is not barred by the public policy of Illinois; (2) that the presence of liability insurance removes the only barrier to the suit; and (3) that the parent has permitted the suit by relinquishing all claims.

Defendant relies principally on the statements in *Foley* v. *Foley*, 61 Ill. App. 577, and *Meece* v. *Holland Furnace Co.* 269 Ill. App. 164, that a minor cannot sue his father or

one standing in *locus parentis* unless such right is authorized by statute.

The rule of parental immunity from tort liability was first laid down in *Hewlett* v. *George*, 68 Miss. 703, without citation of authority. Four years later, in 1895, the rule was adopted in Illinois in *Foley* v. *Foley*, without citation of authority. The doctrine was restated in *Meece* v. *Holland Furnace Co.* 269 Ill. App. 164, upon the authority of the *Foley case*. However, the suit there was against the father's employer and the statement of parental immunity does not appear to have been necessary to the decision. We do not consider the authority of these cases in itself sufficient to preclude our examination into the basic policy question involved.

It would be a most difficult and unrewarding task to attempt to determine the numerical weight of authority on this question. Suffice to say that the authorities are in hopeless conflict. (See Reeve, Domestic Relations, p. 287; Vol. I Sherman & Redfield, Negligence, p. 339.) A number of jurisdictions have followed the *Hewlett* rule of parental immunity. (*Roller* v. *Roller*, 37 Wash. 242, 79 Pac. 788; *Redding* v. *Redding*, 235 N.C. 638, 70 S.E. 2d 676; *Sorrentino* v. *Sorrentino*, 248 N.Y. 626, 162 N.E. 551; *Brumfield* v. *Brumfield*, 194 Va. 577, 74 S.E. 2d 170; *Ownby* v. *Kleyhammer*, 158 Ark. 369, 250 S.W. 2d 37; *Baker* v. *Baker*, 364 Mo. 453, 263 S.W.2d 29; 67 C.J.S. p. 787.) The logic of the *Hewlett* decision has been convincingly attacked in several cases. *Worrell* v. *Worrell*, 174 Va. 11; *Lusk* v. *Lusk*, 113 W.Va. 17.

The case before us involves an allegation of wilful and wanton misconduct. The courts of several jurisdictions have approved tort actions against a parent by unemancipated children. (See *Aboussie* v. *Aboussie*, (Tex.) 270 S.W. 2d 636; *Ball* v. *Ball*, (Wyo.) 269 P. 2d 302; *Borst* v. *Borst*, 41 Wash. 2d 642, 251 P. 2d 149; *Wright* v.

*Wright,* 85 Ga. A. 721, 70 S.E. 2d 152; *Cowgill* v. *Boock,* 189 Ore. 282, 218 P. 2d 445; *Siembab* v. *Siembab,* 112 N.Y.S. 2d 82; *Signs* v. *Signs,* 156 Ohio St. 566, 103 N.E. 2d 743.) Such actions also found early approval by eminent authors. Quoting from Cooley on Torts, 2d ed. p. 276: "Where the child is injured in his own property or person redress has no necessary connection with the family relation."

In *Cowgill* v. *Boock,* 189 Ore. 282, 218 P. 2d 445, a minor and a parent were killed in an accident caused by the drunken driving of the parent. In said case, the Supreme Court of Oregon permitted the administrator of the estate of the deceased minor child to sue the representative of his father's estate. It was there said: "The question that confronts us is whether the father was acting in his capacity as parent when he took the course which brought death to himself, to his son and to his brother. Before solving the problem, let us suppose that a father, while drunk, brutally beats his daughter, or, seizing a gun, shoots her. Should we say that in acting in such a drunken manner he was exercising a parental function, or would it not be more in keeping with the enlightened views of the day to declare that his drunken action was outside the scope of his parental prerogatives. To hold that such drunken action is within the scope of parental authority would outlaw the child and close all court-rooms to her. Surely public policy does not demand such a holding. To the contrary, it requires a holding that an injury inflicted upon an unemancipated child by the father while in a drunken condition is not within the scope of parental authority. The conduct of the father while at the tavern and his subsequent driving were not parental in nature. They were, in truth, violations of the father's duty to his son. The mantle of parental nonliability was never intended for a case such as this." Cf. *Borst* v. *Borst,* 41 Wash.2d 642, 251 P.2d. 149.

We consider the question before us a novel one in Illi-

nois. The Appellate Court decisions cited to us do not determine the question of parental immunity in case of wilful and wanton misconduct. Any justification for the rule of parental immunity can be found only in a reluctance to create litigation and strife between members of the family unit. While this policy might be such justification to prevent suits for mere negligence within the scope of the parental relationship we do not conceive that public policy should prevent a minor from obtaining redress for wilful and wanton misconduct on the part of a parent. To tolerate such misconduct and deprive a child of relief will not foster family unity but will deprive a person of redress, without any corresponding social benefit, for an injury long recognized at common law.

We do not feel that the announcement of this doctrine should be left to the legislature. The doctrine of parental immunity, as far as it goes, was created by the courts. It is especially for them to interpret and modify that doctrine to correspond with prevalent considerations of public policy and social needs.

Accordingly, the judgments of the trial court and of the Appellate Court are reversed and the cause remanded to the trial court, with directions to deny the motions to dismiss.

*Reversed and remanded, with directions.*