**Theodore Schenk, Plaintiff-Appellant, v. Nancy A. Schenk, Defendant-Appellee.**

**Gen. No. 10,935.**

Fourth District.

October 10, 1968.

Dunn, Dunn, Brady, Goebel, Ulbrich & Hayes, of Bloomington (Frank M. Brady and John Morel, of counsel), for appellant.

Costigan and Wollrab, of Bloomington (William F. Costigan, of counsel), for appellee.

SMITH, P. J.

This is a suit by a father against his seventeen-year-old, unemancipated daughter for injuries sustained when she negligently ran into him with an automobile while he was a pedestrian on the streets of Bloomington. Defendant's motion to dismiss was allowed, plaintiff elected to stand on his complaint, and the trial court entered a judgment in bar of the suit. The trial court's action was based on the proposition that absent any allegations of willful and wanton misconduct on the part of

the defendant, no cause of action is stated. Both sides seem to agree that the judgment order so entered states the current law of this State. Simple disposition suggests that the doctrine of "stare decisis" be invoked and the judgment affirmed.

The facts are not in dispute. The alleged negligent acts in the operation of the motor vehicle did not arise out of any father-daughter or family relationship. The duty breached by the defendant in the operation of the automobile was the same duty owed by her to all pedestrians lawfully using the public street. Tort responsibility and civil liability would rest on this seventeen-year-old, unemancipated-minor defendant had the victim not been her father and mother. If the defendant can avoid this tort responsibility and civil liability, it is solely for the reason that she is her father's daughter. The plaintiff earnestly and succinctly states his position in asserting "that the proposition that a parent or child cannot sue each other for ordinary negligence where the negligence arises out of activities which are not a part of a parental relationship is not a just law; that the numerous exceptions to this rule in other jurisdictions, and the existence of liability insurance and changes in social and economic reality require a reexamination of the rule, and said rule should not be the law of the State of Illinois."

■ ■ "Stare decisis" is a stalwart pillar in the judicial process and a worthy and respected proponent of stability in the law. Although it is not inviolable, our judicial system demands that it be overturned only on a showing of good cause. Where such good cause is not shown, it will not be repudiated. Heimgaertner v. Benjamin Elec. Mfg. Co., 6 Ill2d 152, 128 NE2d 691. Nevertheless, "stare decisis" has not been an insuperable barrier to a reconsideration of decisions or principles where adequate cause is shown and impelling changing conditions exist. Doggett v. North American Life Ins. Co.,

396 Ill 354, 71 NE2d 686; Amann v. Faidy, 415 Ill 422, 114 NE2d 412; Bradley v. Fox, 7 Ill2d 106, 129 NE2d 699; Nudd v. Matsoukas, 7 Ill2d 608, 131 NE2d 525; Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill2d 11, 163 NE2d 89; Suvada v. White Motor Co., 32 Ill2d 612, 210 NE2d 182. We would, therefore abjure our responsibilities as a reviewing court if we did not now turn to the question of whether the public policy enunciated in the parent-child immunity rule has now been dissipated and the rule thus emasculated.

The instant case used as its springboard the language of our Supreme Court in this area in Nudd v. Matsoukas, 7 Ill2d 608, 619, 131 NE2d 525, 531. The court said:

"Any justification for the rule of parental immunity can be found only in a reluctance to create litigation and strife between members of the family unit. *While this policy might be such justification to prevent suits for mere negligence within the scope of the parental relationship* we do not conceive that public policy should prevent a minor from obtaining redress for willful and wanton misconduct on the part of a parent. . . ." (Emphasis supplied.)

The doctrine of parental immunity was court created and may be court destroyed. The public policy involved is the interest of the State in maintaining harmony, avoiding strife, and insuring a proper atmosphere of cooperation, discipline and understanding in the family. The rule and the reason for it was again expressed in Mroczynski v. McGrath, 34 Ill2d 451, 216 NE2d 137. Enunciated as it is in those instances where it is the child suing a parent, we see no persuasive reason why a like policy is not equally involved in a parent's suit against the child for his tortious conduct. Those jurisdictions which deny it to the one deny it to the other and for the same reason of maintaining family harmony and parental discipline. 60 ALR2d 1284.

We see little justification for the conclusion that either the State or a court is or should be any less interested today in the peace, harmony, tranquility, discipline, cooperation, love and respect essential to good family relationship than when the family immunity rule was promulgated many, many years ago. Where the injury is inflicted by either the parent or the child through willful, wanton, intentional or criminal conduct, there is sound reason to believe that the harmony, peace, tranquility, discipline, cooperation and mutual respect in the home has already become eroded, if it is not entirely absent, and the invocation of the immunity rule is a dubious attempt to save that which is already lost. Indeed the lurking presence of civil liability in willful, wanton, intentional or criminal conduct of child toward parent or parent toward child might well serve as an additional deterrent in many instances to just such conduct. The reason for the rule being nonexistent, the rule disappears. Thus, Nudd seems to make it clear that there is no overriding public policy that bars recovery in these areas, but leaves open the question as to whether or not that overriding public policy yet remains in the area of ordinary negligence "within the scope of the parental relationship."

The pleadings in this case do not bring us within the perimeter of any of the conduct discussed in the preceding paragraph. We necessarily turn then to the question as to whether or not the negligent acts here charged and the injury here sustained is conduct within or without the scope of the parental relationship. There is nothing in this complaint that suggests that the father in crossing the street or the unemancipated daughter in the operation of the motor vehicle were to any extent performing a duty arising out of the family relationship or engaged in any enterprise having for its purpose the furtherance of the family relationship. We are necessarily circumscribed by the allegations of the complaint.

There are no facts alleged from which we can conclude directly or by reasonable inference that either party was engaged in conduct arising out of the parent-daughter relationship or in the furtherance of the usual family objectives. The determinative issue is thus narrowed to the question as to whether or not in a parent-child relationship the immunity rule should bar recovery for conduct wholly unrelated to the objectives or purposes of the family itself.

The doctrine of parental immunity for personal torts seems to have sprung full-grown from the sometimes fertile womb of judicial decisions. It was born in 1891 with Hewlett v. Ragsdale, 68 Miss 703, 9 So 885, a Mississippi case of false imprisonment which cites no authority and can only be justified by the judicial conclusion that litigation and strife between members of the family unit is reprehensible and contrary to public policy. From the time, however, of its general acceptance in this country, it has undergone a general erosion like the all-day sucker in the hands of a small child until there isn't much left but the stick itself. To here cite in detail the many departures from the rule would extend this opinion to untold lengths. The divergent views and inconsistent holdings may be readily pursued by the citations contained in 19 ALR2d 423; 60 ALR2d 1284; Prosser, Law of Torts, 3d ed 1964, § 116, p 885. An examination of these authorities will indicate that some jurisdictions have held that the immunity rule has not been applied to property rights, contract rights, an emancipated child, wrongful death actions, suits between brothers and sisters, a stepfather, an adoptive parent, or a grandparent, to cases where the child is injured in the course of a business rather than a personal activity, and in suits involving willful, wanton, intentional or criminal conduct. If harmony and unity in the family is the public policy protecting the rule, it would seem to be present in

these areas. Neither do we think that the existence or nonexistence of protective insurance is a sound basis for the determination of liability. It is at best an illogical expression of disenchantment with the immunity rule and a baseless escape valve for a refusal to impose that rule. From these observations, it is easy to conclude that the justification for the rule based on harmony, cooperation and family affection and its preservation is an excuse rather than a solid foundation for the rule. It would thus follow that since the reason for the rule is nonexistent, the rule itself should be interred. We do not reach this result.

In Mroczynski, our Supreme Court pointed out, we think, the sound reason for not repudiating the immunity doctrine in toto. This was a suit by an incompetent against his father's estate and the wrongs complained of were "the destruction of the family unit and relationship terminating in the divorce, the denial of unstinted financial aid, accumulation of a large estate at the son's expense, denial of a normal home, parental affection, care, comfort, companionship and the guidance of a normal father-child relationship, so as to willfully inflict severe emotional distress and mental suffering on him." In Zepeda v. Zepeda, 41 Ill App2d 240, 190 NE2d 849, cited with approval in Mroczynski, the Appellate Court said, "a legitimate child cannot maintain an action against his own parents for lack of affection, for failure to provide a pleasant home, for disrupting the family life or for being responsible for a divorce which has broken up the home," and then denied recovery to an illegitimate child for the announced reason that it would be an incongruity to allow a recovery to an illegitimate child for such tortious acts and deny recovery to a natural and legitimate child. These cases are but illustrations of the danger involved and the flood of litigation that would be invited to unequivocally discard the family immunity

rule. We therefore conclude that there are no impelling reasons for eroding or emasculating the family immunity rule for conduct of either parent or child arising out of the family relationship and directly connected with the family purposes and objectives in those cases where it may be said that the carelessness, inadvertence or negligence is but the product of the hazards incident to interfamily living and common to every family. In such instances the immunity doctrine is neither unjust, unreasonable nor without a sound and solid foundation. To hold otherwise is to inject into the courts a judicial supervision over everyday family conduct of parent and child, and invite endless litigation over what is or is not ordinary negligence in the operation of a household. The assumption of the role of paterfamilias by either the courts or State, except under most compelling circumstances, is foreign to our way of life.

The statement of these principles, however, does not preclude a holding that the complaint in the case at bar states a cause of action. As stated in Cooley on Torts, 2nd ed, p 276: "Where the child is injured in his own property or person redress has no necessary connection with the family relation." The facts here charged occurred during the exercise by both the father and the child of his individual rights on the public streets and with no direct connection with the family relationship. It seems thus clear to us that reason and justice require that the immunity rule should not stand as an insuperable bar to redress for injuries occasioned by the exercise of those rights.

██ Accordingly, we hold that the complaint states a cause of action for tortious conduct having no direct family relationship and states a good cause of action. The judgment of the trial court is reversed and the cause remanded to that court with directions to vacate the judgment, deny the motion to dismiss, require the

206

defendant to answer, and for further proceedings in conformity with the views herein expressed.

Reversed and remanded.

TRAPP and CRAVEN, JJ., concur.