JUDY SETINC, Special Adm'r of the Estate of Joseph Masny, Deceased, *et al.*, Plaintiffs-Appellants, v. JOSEPH C. MASNY, Defendant-Appellee.

Third District   No. 3—88—0421

Opinion filed June 16, 1989.

16

Ketchum & Associates, Ltd., of Chicago (Paul E. Peldyak, of counsel), for appellants.

James T. Ferrini, Thomas H. Ryerson, and Jeanette M. Bourey, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (Edward M. Kay, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Eleven-year-old Joseph Masny died as a result of severe burns suffered when a can of model airplane fuel exploded in the family garage. Helen Masny, his mother, and Judy Setinc, the special administrator of his estate, filed suit against decedent's father, Joseph C. Masny, to recover damages. Plaintiffs appeal from those orders of the trial court dismissing some counts of the complaint and entering summary judgment in favor of defendant as to the other counts.

Briefly, defendant and his son flew model airplanes as a hobby. The airplane fuel, which is a mixture of gasoline and nitroglycerine,

was stored in a one-gallon can attached to a pack of equipment used to fly the model planes. The pack was kept on a workbench in the Masny family garage.

On the morning of June 29, 1984, defendant locked the garage when he left for work, but later plaintiff Helen Masny left the garage unlocked when she went to the store for groceries. While she was gone, decedent and a friend went into the garage to play. Decedent lit a candle, set the candle on a board, and, using the hand pump on the fuel can, began to pump some model airplane fuel onto the burning candle. The fuel can exploded, and decedent was severely burned. He died in December of 1984 as a result of the burns.

The complaint in this cause contained the following counts:

I. Under the Survival Act (Ill. Rev. Stat. 1983, ch. 110½, par. 27—6), to recover for decedent's pain and suffering caused by defendant's negligence.

II. Under the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70, par. 1 *et seq.*), to recover for decedent's wrongful death caused by defendant's negligence.

III. Under the family expense statute (Ill. Rev. Stat. 1983, ch. 40, par. 1015), to recover medical expenses incurred as a result of defendant's negligence.

IV. Under the Survival Act, to recover for decedent's pain and suffering caused by defendant's willful and wanton misconduct.

V. Under the Wrongful Death Act, to recover for decedent's wrongful death caused by defendant's willful and wanton misconduct.

VI. Under the Survival Act, to recover for decedent's pain and suffering caused by a nuisance maintained by defendant.

VII. Under the Wrongful Death Act, to recover for decedent's wrongful death caused by a nuisance maintained by defendant.

The trial court granted motions for summary judgment in favor of defendant as to counts I, II, III, IV, and V. Counts VI and VII were disposed of by orders of dismissal.

Plaintiffs' first contention is that the trial court erred in ruling that the common law doctrine of parental tort immunity is a bar to the causes of action grounded in negligence (counts I and II) brought by the administrator of decedent's estate against the father. Plaintiffs challenge the public policy reasons advanced in support of the doctrine.

One of the cases plaintiffs rely upon is *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12, where a father's cause of action against his daughter arising out of an accident where she struck her pedestrian father as she drove the car was allowed on the ground that the daughter's allegedly tortious conduct had no direct connection with the family relationship. While the court there recognized an exception to the immunity doctrine, the court also spoke in defense of the doctrine as follows:

"[T]here are no impelling reasons for eroding or emasculating the family immunity rule for conduct of either parent or child arising out of the family relationship and directly connected with the family purposes and objectives in those cases where it may be said that the carelessness, inadvertence or negligence is but the product of the hazards incident to interfamily living and common to every family. In such instances the immunity doctrine is neither unjust, unreasonable nor without a sound and solid foundation. To hold otherwise is to inject into the courts a judicial supervision over everyday family conduct of parent and child, and invites endless litigation over what is or is not ordinary negligence in the operation of a household. The assumption of the role of paterfamilias by either the courts or the State, except under most compelling circumstances, is foreign to our way of life." 100 Ill. App. 2d at 206, 241 N.E.2d at 15.

■ Parental tort immunity remains the law in Illinois. Most recently, an appellate court ruling which would have abrogated the parental tort immunity doctrine was nullified by the supreme court in *Stallman v. Youngquist* (1988), 125 Ill. 2d 267, 531 N.E.2d 355. There the supreme court vacated that portion of the appellate court decision which recognized a cause of action for negligence brought on behalf of a child against her mother, who allegedly caused an injury to her unborn child in an automobile accident.

Plaintiffs further argue that collusion is not possible here because there was an independent eyewitness, a neighbor, who saw the boys playing in the garage and saw the explosion. Plaintiffs reason that there is little likelihood of perjury or fraud or other collusive conduct under the circumstances of this case. This issue was addressed in *Chamness v. Fairtrace* (1987), 158 Ill. App. 3d 325, 327, 511 N.E.2d 839, where the court said:

"The doctrine has been justified on the basis that allowing a child to sue a parent for a personal tort would (1) disrupt family harmony, (2) encourage collusion, perjury and fraud be-

tween family members, and (3) impair parental authority and discipline."

The facts in *Chamness v. Fairtrace* are similar to those in the case before us. The father as administrator of the estate of his deceased daughter brought a wrongful death action against the mother alleging that the mother's negligence caused an automobile collision which resulted in the death of the unborn child. The court recognized that any recovery for pecuniary loss would inure to the benefit of the defendant through the husband-wife relationship. The court noted the evident possibility of collusion. Here we cannot ignore the fact that any award of damages to the plaintiff mother will inure to the benefit of the defendant father.

■ Plaintiffs additionally argue that this case comes within an exception to the parental tort immunity doctrine in that the storage of highly volatile model airplane fuel is not a "family purpose" as required to invoke the doctrine. (See *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12.) We do not agree. The storing of fuel and other equipment necessary to fly the model airplanes was a necessary adjunct to the activity of flying those airplanes. Since flying models was plainly a family recreational activity, the storage and maintenance of the equipment and supplies necessary to do so were also a part of the family activity.

We conclude that the trial court correctly ruled that parental tort immunity is a bar to the causes of action asserted in counts I and II of the complaint.

■ Plaintiffs also contend that it was error to grant summary judgment as to counts IV and V because the pleadings raise a substantial issue of material fact as to whether defendant was guilty of willful and wanton misconduct. The parental tort immunity doctrine is not a bar to an action for willful and wanton misconduct. (*E.g.*, *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525; *Chamness v. Fairtrace* (1987), 158 Ill. App. 3d 325, 511 N.E.2d 839.) A widely accepted definition of wilful and wanton misconduct is set forth in *Klatt v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 481, 488, 211 N.E.2d 720, 724, as "intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care."

■ Plaintiffs allege, *inter alia*, that defendant "[r]ecklessly and with conscious disregard for others kept gasoline and other volatile

combustibles and/or compounds in [his] garage in such a manner as to be accessible to decedent and other children when he knew or should have known children frequented said garage." There is no dispute that defendant instructed decedent of the flammable nature of the airplane fuel, that he warned him of the danger, and that he locked the garage door when he left on the day of the accident. The trial court apparently concluded that defendant's conduct in locking the garage door was "ordinary care," under the circumstances, so as to preclude a claim of willful and wanton misconduct, and we agree. Neither the allegation quoted above nor the other allegations of willful and wanton misconduct, when considered together with the pleadings and the undisputed deposition testimony, raise a material issue of fact sufficient to justify setting aside the summary judgment entered on counts IV and V.

■ Another error asserted by plaintiffs was the entry of summary judgment in favor of defendant on count III. In that count the mother sought to recover decedent's medical expenses for which she became liable under section 15 of "An Act *** in relation to husband and wife" (Ill. Rev. Stat. 1981, ch. 40, par. 1015). The statute provides that family expenses are "chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and in relation thereto they may be sued jointly or separately." Ill. Rev. Stat. 1981, ch. 40, par. 1015.

This statute has been held to authorize the wife to sue a third-party tortfeasor to recover medical expenses incurred by a member of the family. (*Houghton v. Novak* (1973), 9 Ill. App. 3d 699, 292 N.E.2d 905.) However, it makes no provision for the liability of one spouse to another, and as the court notes in *Houghton v. Novak*, at common law only the husband was liable for family expenses. Plaintiffs do not allege that the mother has actually paid the medical expenses but only that she is liable for them under this statute. Since there is neither a common law nor a statutory basis for this cause of action, the trial court did not err in entering summary judgment in favor of defendant.

■ Both parties argue at some length as to whether legislation abolishing interspousal tort immunity, effective January 1, 1988, should be applied retroactively to this case, thereby requiring us to reverse the judgment of the trial court entered on November 20, 1987. (Ill. Rev. Stat. 1987, ch. 40, par. 1001, as amended by Pub. Act 85—625, §1, eff. Jan. 1, 1988.) However, we do not decide whether the doctrine of interspousal immunity is a bar to plaintiffs' action in this instance since we have held that count III failed to

state a cause of action.

■ Finally, plaintiffs claim that the trial court should not have dismissed counts VI and VII since, it is argued, they allege a valid cause of action for public nuisance. The theory of liability set forth in those two counts is that defendant stored volatile combustible fuel in his garage in a manner that created a condition dangerous to the general public. Plaintiffs cite section 1 of "An Act to regulate the storage, transportation, sale and use of gasoline and volatile oils" (Ill. Rev. Stat. 1987, ch. 127½, par. 153), which states that it is unlawful for any person to store gasoline and other volatile combustibles in such manner or under such circumstances as will jeopardize life or property. Section 7 of that act provides various criminal and civil penalties for violations of the statutory provisions, nearly all of which pertain to underground storage tanks.

Plaintiffs argue that the storage of model airplane fuel in a can on the workbench of defendant's garage was, under the statute, an unlawful use of defendant's property and, consequently, was a public nuisance rendering defendant liable for damages arising from such use. Furthermore, plaintiffs cite no local ordinance or administrative rule violated by defendant. Since the undisputed facts indicated that defendant stored this fuel in locked garage, it would be impossible to say that it was stored in a manner that would "jeopardize life or property" so as to violate the statute. We agree with the trial court that the complaint failed to state a cause of action for nuisance.

We affirm the judgment in favor of defendant entered in the circuit court of Will County.

Affirmed.

SCOTT and STOUDER, JJ., concur.